## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF BRONX

SHERARD CLARK, individually and on behalf of all others similarly situated,

                    Plaintiff,

v.

BAY PARK CENTER FOR NURSING AND REHABILITATION, LLC d/b/a BAY PARK CENTER FOR NURSING AND REHABILITATION; BENJAMIN LANDA; BEN PHILIPSON; MAYER FISCHL; ELI GRINSPAN; CHANA LERNER; BERISH RUBINSTEIN; NAOMI TESSLER; RICHARD BUSELL; SENTOSACARE, LLC; and DOES 1-25,

                    Defendants.

Index No. _____

Summons Filed:
November 27, 2018

**SUMMONS**

**To the above-named Defendants**:

      You are hereby summoned and required to answer the attached complaint of the Plaintiff in this action and to serve a copy of your answer upon the attorneys for the Plaintiff at the address stated below.

      If this summons was personally delivered to you in the State of New York, you must serve the answer within 20 days after such service, excluding the day of service. If this summons was not personally delivered to you in the State of New York, you must serve the answer within 30 days after service of the summons is complete, as provided by law.

      If you do not serve an answer to the attached complaint within the applicable time limitation stated above, a judgment may be entered against you, by default, for the relief demanded in the complaint.

      Plaintiff designates Bronx County as the place of trial.

      The basis of venue is defendant BAY PARK CENTER FOR NURSING AND REHABILITATION, LLC's place of residence, which is in the County of Bronx: 801 Co-op City Boulevard, Bronx, New York.

Dated:  White Plains, New York
       November 27, 2018

**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**

By: */s/Todd S. Garber*
Todd S. Garber
Jeremiah Frei-Pearson
John Sardesai-Grant
Ayana McGuire
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
tgarber@fbfglaw.com
jfrei-pearson@fbfglaw.com
jsardesaigrant@fbfglaw.com
amcguire@fbfglaw.com

*Attorneys for Plaintiff and the Proposed Class*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF BRONX**

---

SHERARD CLARK, individually and on behalf of all
others similarly situated,

                           Plaintiff,

v.

BAY PARK CENTER FOR NURSING AND
REHABILITATION, LLC d/b/a BAY PARK
CENTER FOR NURSING AND REHABILITATION;
BENJAMIN LANDA; BEN PHILIPSON; MAYER
FISCHL; ELI GRINSPAN; CHANA LERNER;
BERISH RUBINSTEIN; NAOMI TESSLER;
RICHARD BUSELL; SENTOSACARE, LLC; and
DOES 1-25,

                         Defendants.

---

Index No. _____

**CLASS ACTION COMPLAINT**

Date Index No. Purchased:
November 27, 2018

Plaintiff Sherard Clark, individually and on behalf of all others similarly situated (also referred to as "Patients," "Residents," or the "Class"), by and through his undersigned attorneys, Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, as and for his class action complaint, allege, with personal knowledge as to his own actions and based upon information and belief as to those of others, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this class action against Bay Park Center for Nursing and Rehabilitation, LLC ("Bay Park LLC"); Benjamin Landa, Ben Philipson, Mayer Fischl, Eli Grinspan, Chana Lerner, Berish Rubinstein, Naomi Tessler, and Richard Busell (the "Individual Defendants"); SentosaCare, LLC; and Does 1-25 (collectively, "Defendants") -- the owners and operators of Bay Park Center for Nursing and Rehabilitation, a nursing home located at 801 Co-op City Boulevard, Bronx, New York (the "Facility") -- on behalf of himself and a class of similarly situated nursing home patients who were victimized by unsafe and inadequate care in

the Facility. Defendants' unlawful conduct violates Section 2801-d of New York's Public
Health Law ("PHL").[1]

      2.      Defendants are entrusted to provide care to the elderly and infirm nursing home
patients in their custody. Unfortunately, Defendants have betrayed and continue to betray that
trust. For example, Defendants fail to sufficiently staff the Facility. Throughout their operation
of the Facility, Defendants have failed to staff a sufficient number of nurses and aides, thereby
depriving the Facility's residents of the level of care required under New York and federal law.[2]
Among many other shocking failures, this understaffing caused Defendants to fail to regularly
change patients bandages, clean their wounds, or send patients to their specialist appointments
and to leave patients attached to empty IVs, resulting in some patients passing out on the floor or
contracting serious life threatening infections.

      3.      Unsurprisingly, the Nursing Home Compare website operated by the federal
Centers for Medicare & Medicaid Services ("CMS") shows that the Facility currently receives a

---

[1] PHL § 2801-d provides a cause of action by residents against nursing homes that deprive them
of "any right or benefit created or established for the well-being of the patient by the terms of
any contract, by any state statute, code, rule or regulation or by any applicable federal statute,
code, rule or regulation." *See* PHL 2801-d(1).

[2] *See* 10 N.Y.C.R.R. § 415.13 (mandating that a nursing facility "shall provide sufficient nursing
staff to provide nursing and related services to attain or maintain the highest practicable physical,
mental, and psychosocial well-being of each resident"); 42 U.S.C. § 1396r(b)(4)(C)(i)(I)
(mandating that a nursing facility "must provide 24-hour licensed nursing services which are
sufficient to meet the nursing needs of its residents"); 42 U.S.C. § 1395i-3(b)(4)(A)(i)
(mandating that a nursing facility must provide "nursing services and specialized rehabilitative
services to attain or maintain the highest practicable physical, mental, and psychosocial well-
being of each resident").

2

rating of one star ("much below average") out of a five star scale in staffing, further evidencing the lack of adequate care and staffing at the Facility.[3]

4.      As the Facility has approximately 480 beds and is operating at a high occupancy rate (above 90%),[4] there are many other residents currently languishing in an unsafe and inadequate nursing home.

5.      Accordingly, Plaintiff, individually and on behalf of the Class, asserts claims against Defendants for violation of PHL § 2801-d and seek monetary damages in an amount to be determined at trial, statutory damages in accordance with PHL § 2801-d(2), and injunctive relief prohibiting further wrongful conduct, as well as any other available relief at law or in equity.

## PARTIES

**Plaintiff**

6.      Plaintiff Sherard Clark was a resident of the Facility from approximately February 16, 2018, to July 13, 2018.

7.      Sherard Clark is a citizen and resident of Bronx County, New York.

**Defendants**

8.      Defendant Bay Park Center for Nursing and Rehabilitation, LLC d/b/a Bay Park Center for Nursing and Rehabilitation ("Bay Park LLC") is a New York limited liability company with its principal place of business in Bronx County, New York.

---

[3] *See* Nursing Home Compare Profile for the Facility (available at https://www.medicare.gov/nursinghomecompare/profile.html#profTab=-1&ID=335581) (accessed November 20, 2018) (copy annexed as Exhibit 1).

[4] *See* New York State Department of Health profile for the Facility (available at https://profiles.health.ny.gov/nursing_home/view/150679) (accessed August 30, 2018).

3

9.      Defendants Benjamin Landa, Ben Philipson, Mayer Fischl, Eli Grinspan, Chana Lerner, Berish Rubinstein, Naomi Tessler, Kenneth Tessler, and Richard Busell (the "Individual Defendants") each hold ownership interests in Bay Park LLC.  Benjamin Landa owns a 47.27% interest in Bay Park LLC, Ben Philipson a 37.73% interest, Mayer Fischl a 1.0% interest, Eli Grinspan a 0.5% interest, Chana Lerner a 5.0% interest, Berish Rubinstein a 3.0% interest, Naomi Tessler a 5.0% interest, and Richard Busell a 0.5% interest.  On information and belief, the Individual Defendants are citizens and residents of New York State.

10.      Defendant SentosaCare, LLC is a New York limited liability company with its principal place of business in Nassau County, New York.  SentosaCare, LLC provides administrative services to the Facility,[5] and thus has the ability to influence the operation and management of the Facility.  Benjamin Landa and Ben Philipson, the majority owners of Bay Park LLC, are also the principal members of SentosaCare, LLC.

11.      In addition to the Defendants identified with particularity, Plaintiff alleges all claims against Doe Defendants 1-25, with addresses and names unknown, who are other persons that have owned, operated, or controlled the Facility during the relevant period.

## JURISDICTION AND VENUE

12.      This Court has jurisdiction over all causes of action asserted herein.  Defendants are subject to the personal jurisdiction of this Court pursuant to CPLR 301.

---

[5] See State of New York Public Health and Health Planning Council Committee Day Agenda for January 28, 2016, at Project #152177-E Exhibit Page 10 (available at https://www.health.ny.gov/facilities/public_health_and_health_planning_council/meetings/2016-01-28/docs/exhibits.pdf) (last visited October 31, 2018) at (disclosing that "Sentosa Care LLC contracts for administrative services with the following nursing homes . . . : Bay Park Center for Nursing and Rehabilitation; Eastchester Rehabilitation and Health Care Center; Nassau Extended Care Center; Park Avenue Extended Care Facility; Seagate Rehabilitation and Nursing Center").

4

13.     Defendants have conducted and do conduct business in the State of New York, including through operation of the Facility.

14.     Venue is proper in this County pursuant to CPLR 503(c) because defendant Bay Park LLC maintains its principal place of business in Bronx County, New York.

15.     Venue is also proper in this County pursuant to CPLR 503(a) because Plaintiff resides in this County.

## FACTUAL BACKGROUND

I.      **The Nursing Home Crisis Leads To Legislation Granting Patients A Right To Bring Class Actions Against Operators For Improper Care And To Federal Databases Tracking Nursing Home Ratings.**

16.     In an effort to protect the vulnerable nursing home population, ensure that their rights are enforced, and provide them with a form of legal recourse which would not otherwise be economically feasible, the New York State Legislature enacted PHL §§ 2801-d and 2803-c.

17.     Predating the enactment of PHL §§ 2801-d and 2803-c, "the public's confidence in the State's ability to protect its most defenseless citizens, the aged and infirm, had been destroyed by a series of dramatic disclosures highlighting the abuses of nursing home care in their State." *See* Governor's Memoranda, Nursing Home Operations, McKinney's 1975 Session Laws of New York, p.1764.  In Governor Carey's letter to the Legislature accompanying the bills for PHL §§ 2801-d and 2803-c, he stated that these bills were "designed to deal directly with the most serious immediate problems which have been uncovered with respect to the nursing home industry."[6]  The Sponsor's Memorandum relating to PHL § 2803-c and the transcripts of the Senate debates indicate that the purpose of the statute was to establish certain

---

[6] *Morisett v. Terence Cardinal Cooke Health Care Ctr.*, 8 Misc.3d 506, 509 (Sup. Ct. N.Y. Cnty. 2005).

5

minimum standards for the care of nursing home patients. *See* Governor's Bill Jacket for

Chapter 648 of the Laws of 1975; Senate Debate Transcripts, 1975, Chapter 648 Transcripts,

pp.4521, 4525. The term "residential health care facility" was intentionally used by the

Legislature in an effort to curb abuses in the nursing home industry.[7]

18.     The Commission's Summary Report specifically indicated that PHL § 2801-d

creates a cause of action for a patient of a facility which deprived the patient "of rights or

benefits created for his well-being by federal or state law or pursuant to contract" which resulted

in injury to the patient. The Commission stated that this statute "introduce[s] a degree of

equality between nursing homes and their otherwise vulnerable and helpless patients and,

through private litigation brought by patients either in individual or class action lawsuit, provides

a supplemental mechanism for the enforcement of existing standards of care."

19.     The Legislative Memorandum "Nursing Home–Health Care Facilities–Actions by

Patients" relating to PHL § 2801-d observes that nursing home patients "are largely helpless and

isolated," that many are "without occasional visitors," and that "[m]ost cannot afford attorneys,"

and therefore the bill provides nursing home patients "with increased powers to enforce their

rights to adequate treatment and care by providing them with a private right of action to sue for

damages and other relief and enabling them to bring such suits as class actions." *See*

McKinney's Session Laws of New York, 1975 pp.1685-86. That memorandum states that the

proposed PHL § 2801-d "creates incentives which would encourage private non-governmental

parties (*i.e.*, plaintiffs' attorneys) to help protect the rights of nursing home patients." *Id.*

---

[7] *See Town of Massen v. Whalen*, 72 A.D.2d 838 (3rd Dep't 1979).

6

20.     This statutory cause of action was created as an additional remedy, separate and distinct from other available traditional tort remedies.[8]

21.     In addition, in the wake of an emphasized focus on the adequacy of care provided by skilled nursing home facilities, in December of 2008, the Centers for Medicare & Medicaid Services ("CMS") enhanced its Nursing Home Compare public reporting site to include a set of quality ratings for each nursing home that participates in Medicare or Medicaid.  The primary goal of this rating system is to provide residents and their families with an easy way to assess nursing home quality, in order to make meaningful distinctions between high and low performing nursing homes.  The rating system features an overall five-star rating based on facility performance in three areas, each of which has its own five-star rating: (1) health inspections, which is measured based on outcomes from State health inspections; (2) staffing, which is a measure based on the nursing home's aggregate staffing demand (based ultimately on the residents' Minimum Data Set ("MDS") -- a set of metrics used to determine for each resident the amount of staffing needed) and staffing supply (based on payroll records for Registered Nurse ("RN"), Licensed Practitioner Nurse ("LPN"), and nurse aide hours per resident per day); and (3) quality measures.[9]

22.     This class action seeks to address the injustices that caused the Legislature to enact PHL § 2801-d.  As alleged in more detail below, Defendants have violated and continue to

---

[8] *See Kash v. Jewish Home & Infirmary of Rochester, N.Y. Inc.*, 61 A.D.3d 146, 150 (4th Dep't 2009).

[9] *See* Centers for Medicare & Medicaid Services, "Design for Nursing Home Compare Five-Star Quality Rating System: Technical User's Guide" (July 2018 ed.) (the "CMS Technical Guide") (available at https://www.cms.gov/Medicare/Provider-Enrollment-and-Certification/CertificationandComplianc/Downloads/usersguide.pdf) (last visited August 28, 2018).

7

violate their statutory obligations by failing to provide, among other things, adequate staffing, supervision, treatment, hygiene, and medical attention to the Class.

## II.     Defendants Disregard The Regulatory Framework That Protects Nursing Home Patients.

23.     In 2007, Bay Park Center for Nursing and Rehabilitation, LLC was established as the new operator of the Facility, which had previously been known as Hebrew Hospital Home and would be renamed Bay Park Center for Nursing and Rehabilitation.

24.     The Facility is a member of the SentosaCare nursing home network, and SentosaCare provides administrative services for the Facility.[10]  As early as October 2015, local news media reported that staffing levels among SentosaCare nursing homes were low.[11]

## III.     The Facility Is Unsafe And The Conditions To Which Its Patients Are Subjected Violate Numerous Statutes.

25.     Conditions at the Facility have been and continue to be unsafe and violative of applicable laws, rules, and regulations, and the care provided to Plaintiff and the Class has been and continues to be inadequate.

26.     Defendants failed and continue to fail to promote the care for the Facility's residents in a manner that maintains or enhances each resident's dignity and respect in full recognition of their individuality and in contravention of applicable federal and New York State laws, rules, and regulations.

---

[10] *See* https://web.archive.org/web/20150427042115/http://www.sentosacare.com:80/bronx (April 27, 2015 capture of SentosaCare.com webpage listing affiliated facilities in the Bronx) (copy annexed as Exhibit 2).

[11] https://www.propublica.org/article/new-york-for-profit-nursing-home-group-flourishes-despite-patient-harm (accessed August 29, 2018).

27.     Among other failures, Defendants failed and continue to fail to provide sufficient nursing staff to provide the nursing and related services necessary to attain and maintain the highest practicable physical and psycho-social well-being of the Patients.  A resident's right to sufficient staffing is one of the most important rights protected by New York and federal statutes.[12]

28.     Indeed, the Facility currently receives a rating of one star ("much below average") out of a five star scale for overall staffing from the Nursing Home Compare website operated by CMS.[13]  CMS's star ratings for staffing reflect the relationship of a facility's reported staffing levels to its expected staffing levels (determined by looking at the number of residents and their reported medical conditions).[14]  A one-star or two-star rating indicates that the Facility has actual staffing levels below the expected staffing levels, based on the needs of the residents.[15] Defendants have failed to adequately staff the Facility for years; in all but one quarter since 2013, the Facility has received one and two star ratings for overall staffing and RN staffing.[16]

---

[12] *See* 10 N.Y.C.R.R. § 415.13; 42 U.S.C. § 1396r(b)(4)(C)(i)(I); 42 U.S.C. § 1395i-3(b)(4)(A)(i).

[13] *See* Exhibit 1, Nursing Home Compare Profile, at pages 1 & 4-5.

[14] *See* CMS Technical Guide at 1 ("The staffing measures are derived from data submitted each quarter through the Payroll-Based Journal System (PBJ), along with daily resident census derived from Minimum Data Set, Version 3.0 (MDS 3.0) assessments, and are case-mix adjusted based on the distribution of MDS 3.0 assessments by Resource Utilization Groups, version IV (RUG-IV group).") & 7-12.  In previous years, CMS used different sources for determining the amount of staffing provided and the expected staffing needs (based on the MDS data for all the residents reported by the Facility to CMS), but the star ratings were still determined based on the relationship of staffing provided to expected staffing needs.

[15] *Id.* at 9-12.

[16] *See* Exhibit 3 (table reflecting CMS's archived star ratings for overall staffing and RN staffing from 2013Q1 through 2018Q3).

9

29.    Defendants' failure to properly staff the Facility is particularly egregious because understaffing is one of the primary causes of inadequate care and often unsafe conditions in nursing facilities.  Numerous studies have shown a direct correlation between inadequate staffing and serious care problems including, but not limited to, a greater likelihood of falls, pressure sores, significant weight loss, incontinence, and premature death.  Although the dangers caused by understaffing are common knowledge in the nursing home industry, Defendants nonetheless chose not to provide adequate staffing levels.

30.    Defendants have subjected Plaintiff and the Class to indignities and other harms that directly resulted and continue to result from inadequate nurse staffing levels at the Facility, including but not limited to: no response or long response times to call lights; failure to provide adequate showers; lack of assistance with grooming and bathing; medications not being received on time; inadequate attention to toileting needs requiring Plaintiff and the Class to remain in their own urine and fecal matter for extended periods of time; and being confined to their beds without removal for long periods. Indeed, Plaintiff has found no nurses or doctors present on the floor for hours at a time or indeed for an entire evening.

31.    For example, in February 2018, due to staffing issues Sherard Clark was left sitting with an open wound while in Defendants' care.  There were numerous times Defendants did not change the bandages on his foot.  In fact, Mr. Clark overheard one of the doctors reprimanding a nurse for not attending to his bandaged foot.  This didn't make a difference as she ignored the warning and left his bandages unchanged.  Another doctor told the same nurse a few hours later to change Sherard's bandages -- neither she nor any other nurse attended to his wound.  Because of the lack of staffing at the Facility, there were many times he had to change his bandages himself.

10

FILED: BRONX COUNTY CLERK 11/27/2018 09:23 AM
NYSCEF DOC. NO.

INDEX NO. 33378/2018E

Case 1:19-cv-00506-VSB   Document 1-1   Filed 01/17/19   Page 13 of 23

RECEIVED NYSCEF: 11/27/2018

32.     As a result of the Facility's staffing issues, Sherard's open wound became infected multiple times.  In April 2018, Defendants released Mr. Clark from the Facility.  Due to their inadequate care, his stiches were left in his foot too long and it became infected.  Shortly thereafter when he was readmitted to the Facility in May 2018, Sherard ended up contracting a staph infection -- Methicillin-resistant Staphylococcus aureus (MRSA).  Because of the Defendants lack of staff, appropriate measures were not taken in caring for his wound or scheduling an appointment for him to see a Podiatrist.

33.     Mr. Clark was also left sitting many times with an empty IV because there was no staff around.  On or around June 3, 2018, he was left sitting for almost an hour and even attempted to undo the IV himself.  Needless to say, his attempt failed and he ended up passing out, hitting his head on the floor.  When Sherard awoke, he had a knot on the back of his head.

34.     As a result of Defendants' inadequate care, Sherard Clark has sustained personal injuries and endured conscious pain and suffering.

35.     Upon information and belief, as a result of Defendants' inadequate care, the other members of the Class have sustained physical injuries and endured conscious pain and suffering.

36.     Defendants' inadequate care also injured Sherard Clark and the other members of the Class by placing them at an increased risk of harm.

37.     And Defendants' failure to satisfy its obligations pursuant to federal and New York law -- particularly the obligation to provide sufficient staffing -- economically injured Plaintiff and the other members of the Class by depriving them of the benefit of the services for which they paid Defendants -- namely, a nursing home with, at the least, staffing sufficient to satisfy the requirements of New York and federal law

11

## CLASS ACTION ALLEGATIONS

38.     This action is brought on behalf of the Plaintiff identified above and all similarly

situated persons pursuant to Civil Practice Law and Rules 901, *et seq.*[17]  The Class is defined as:

> All persons who reside, or resided, at the Facility from November
> 27, 2015, to the present.

39.     Plaintiff reserves the right to amend the above definitions, or to propose other or

additional classes, in subsequent pleadings and/or motions for class certification.

40.     Plaintiff is a member of the Class.

41.     Excluded from the Class are: (i) Defendants; any entity in which Defendants have

a controlling interest; the officers, directors, and employees of Defendants; and the legal

representatives, heirs, successors, and assigns of Defendants; (ii) any judge assigned to hear this

case (or any spouse or family member of any assigned judge); (iii) any juror selected to hear this

case; (iv) claims for personal injury and wrongful death; and (v) any and all legal representatives

of the parties and their employees.

42.     This action seeks to enjoin Defendants from understaffing, failing to disclose its

understaffing, and making misleading promises about staffing at the Facility.  In addition, this

action seeks recovery -- including statutory minimum damages -- from the Defendants for their

---

[17] PHL § 2801-d explicitly provides for these statutory claims to be brought as a class action.
*See* PHL § 2801-d(4) (providing that "[a]ny damages recoverable pursuant to this section,
*including minimum damages as provided by subdivision two of this section*, may be recovered in
any action which a court may authorize to be brought as a class action" (emphasis added)).  PHL
§ 2801-d(2) provides that "compensatory damages shall be assessed in an amount sufficient to
compensate such patient for such injury, but in no event less than twenty-five percent of the daily
per-patient rate of payment established for the residential health care facility under section
twenty-eight hundred seven of this article or, in the case of a residential health care facility not
having such an established rate, the average daily total charges per patient for said facility, for
each day that such injury exists."

injuries resulting from Defendants' failure to meet its contractual, statutory, and regulatory obligations.

43.    Plaintiff and the Class satisfy the requirements for class certification as provided by Civil Practice Law and Rules 901, *et seq.*, for the following reasons:

44.    **Numerosity of the Class.**  Members of the Class are so numerous that their individual joinder is impracticable.  The Class consists of hundreds, if not thousands, of persons and is therefore so numerous that joinder of all members, whether required or permitted, is impracticable.  The precise number of persons in the Class and their identities and addresses may be ascertained from Defendants' records.  If deemed necessary by the Court, members of the Class may be notified of the pendency of this action.

45.    **Common Questions of Fact and Law.**  Common questions of law and fact exist as to all members of the Class. These common legal and factual questions include, without limitation:

   a.  Whether Defendants violated or violate New York laws, including, but not limited to, PHL 2801-d, by depriving any patient of the Facility of any right or benefit created or established for the well-being of the patient by the terms of any contract, by any state statute, code, rule, or regulation, or by any applicable federal statute, code, rule, or regulation during the Class Period;

   b.  Whether Defendants violated or violate New York laws, including, but not limited to, PHL 2803-c, by failing to provide any patient of the Facility with adequate and appropriate medical care, failing to provide courteous, fair and respectful care and treatment, and failing to ensure every patient was free from mental and physical abuse during the Class Period;

   c.  Whether Defendants failed or fail to employ an adequate number of qualified personnel to carry out all of the functions of its Facility in violation of PHL 2801-d and 2803-c;

   d.  Whether Defendants' decision to understaff the Facility violated or violates any right(s) of residents as set forth in PHL 2801-d and 2803-c;

13

    e.   Whether Defendants' decision to understaff its Facility and failure to provide adequate and appropriate medical care violated or violates any right(s) of residents as set forth in the Patients' Bill of Rights pursuant to PHL 2803-c;

    f.   Whether Defendants' conduct violated or violates sections 31.19(a) and 16.19(a) of the New York Mental Hygiene Law;

    g.   Whether Defendants' conduct violated or violates section 415 of the New York Code Rules and Regulations, including but not limited to subsections 415.3, 415.5, 415.12, 415.13, 415.14, 415.15, and 415.26; and

    h.   Whether Defendants' conduct violated or violates the federal Nursing Home Reform Act, codified at 42 U.S.C. §§ 1395i-3(a)-(h) & 1396r(a)-(h) and at 42 C.F.R. §§ 483.15, 483.20, 483.25, 483.30, 483.40, 483.60, & 483.75.

46.   **Typicality.**  The claims of Plaintiff are typical of the claims of the proposed Class because Plaintiff's claims are based upon the same legal theories and same violations of New York State law.  Plaintiff's grievances, like the proposed Class members' grievances, all arise out of the same business practices and course of conduct by Defendants.  Further, Plaintiff's damages arise out of a pattern of uniform and repetitive business practices conducted by Defendants.

47.   **Adequacy.**  Plaintiff will fairly and adequately represent the Class on whose behalf this action is prosecuted.  His interests do not conflict with the interests of the Class.

48.   Plaintiff and his chosen attorneys, Finkelstein, Blankinship, Frei-Pearson & Garber, LLP ("FBFG"), are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this Complaint so as to be able to assist in its prosecution.  Indeed, FBFG has been appointed as lead counsel in several complex class actions across the country and has secured numerous favorable judgments in favor of its clients.  FBFG's attorneys are competent in the relevant areas of the law and have sufficient experience to vigorously represent the Class members.  Finally, FBFG possesses the financial resources

14

necessary to ensure that the litigation will not be hampered by a lack of financial capacity and is willing to absorb the costs of the litigation.

49.    **Superiority.**  A class action is superior to any other available methods for adjudicating this controversy.  The proposed class action is the surest way to fairly and expeditiously compensate so large a number of injured persons, to keep the courts from becoming paralyzed by hundreds -- if not thousands -- of repetitive cases, and to reduce transaction costs so that the injured Class members can obtain the most compensation possible.

50.    Class treatment presents a superior mechanism for fairly resolving similar issues and claims without repetitious and wasteful litigation for many reasons, including the following:

a.    Absent a class action, Class members will suffer continuing, ever-increasing damages; violations of Class members' rights will continue without remedy; and the Facility will continue to remain understaffed, resulting in the mistreatment and improper care of its Patients.

b.    It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions.  Many members of the Class are not in the position to incur the expense and hardship of retaining their own counsel to prosecute individual actions, which in any event might cause inconsistent results.

c.    When the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Class.  This will promote global relief and judicial efficiency in that the liability of Defendants to all Class members, in terms of money damages due and in terms of equitable relief, can be determined in this single proceeding rather than in multiple, individual proceedings where there will be a risk of inconsistent and varying results.

d.    A class action will permit an orderly and expeditious administration of the Class claims, foster economies of time, effort, and expense, and ensure uniformity of decisions.  If Class members are forced to bring individual suits, the transactional costs, including those incurred by Defendants, will increase dramatically, and the courts of New York will be clogged with a multiplicity of lawsuits concerning the very same subject matter, with the identical fact patterns and the same legal issues.  A class action will promote a global resolution, and will promote uniformity of relief as to the Class members and as to Defendants.

e.    This lawsuit presents no difficulties that would impede its management by the Court as a class action.  The class certification issues can be easily determined

15

because the Class includes only the residents of the Facility, the legal and factual issues are narrow and easily defined, and the Class membership is limited. The Class does not contain so many persons that would make the Class notice procedures unworkable or overly expensive. The identity of the Class members can be identified from Defendants' records, such that direct notice to the Class members would be appropriate.

## FIRST CAUSE OF ACTION

### PUBLIC HEALTH LAW § 2801-d

51.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained above with the same force and effect as if the same were set forth at full length herein.

52.     At all relevant times, Defendants conducted business as a licensed nursing home as defined under PHL § 2801(2).

53.     At all relevant times, Defendants had possession and control of the Facility's building(s), the nursing home located at 801 Co-op City Boulevard, Bronx, New York 10475.

54.     At all relevant times, Benjamin Landa, Ben Philipson, Mayer Fischl, Eli Grinspan, Chana Lerner, Berish Rubinstein, Naomi Tessler, Richard Busell, and SentosaCare, LLC have each had the ability, acting either alone or in concert with others with ownership interests, to direct or cause the direction of the management or policies of the Facility, and are thus controlling persons of the Facility pursuant to PHL § 2808-a.

55.     The Facility is a geriatric center, adult living facility, and/or a nursing home, which provides nursing care to sick, invalid, infirmed, disabled, or convalescent persons in addition to lodging and board or health related services pursuant to PHL § 2801(2).

56.     The Facility is a residential health care facility as defined in PHL § 2801(3).

57.     Defendants are subject to the provisions of PHL §§ 2801-d and 2803-c, as well as the rules and regulations set forth in sections 31.19(a) and 16.19(a) of the New York Mental Hygiene Law, section 415 of the New York Code Rules and Regulations, and the federal

16

Nursing Home Reform Act.  These rules and regulations impose various obligations on Defendants, including, among others, a duty to adequately staff the Facility.

58.     Plaintiff and the Class entered the Facility for care, treatment, supervision, management, and/or rehabilitation.

59.     Plaintiff and the Class were under the exclusive care, custody, control, treatment, rehabilitation, supervision, and management of Defendants.

60.     During the period of Plaintiff's and the Class's residency in the Facility, Defendants, through their officers, employees, agents, and staff, violated PHL § 2801-d by depriving Plaintiff and the Class of rights or benefits created or established for their well-being by the terms of a contract(s) and/or by the terms of state and federal statutes, rules, and regulations.

61.     During Plaintiff's and the Class's residency, they sustained personal injuries and suffered mental anguish as a result of Defendants' failure to meet its contractual, statutory, and regulatory obligations, particularly the obligation to adequately staff the Facility.

62.     During Plaintiff's and the Class's residency at the Facility, they were and are subjected to indignities and other harms that directly resulted and result from inadequate staffing levels at the Facility, including but not limited to: no response or long response times to a call light; failure to provide adequate showers; lack of assistance with grooming and bathing; medications not being received on time; inadequate attention to toileting needs requiring Plaintiff and the Class to remain in their own urine and fecal matter for extended periods of time; and being confined to their bed without removal for long periods.

63.     Plaintiff complained to the Facility's staff regarding the neglectful, improper, and/or inadequate care and treatment of Plaintiff and the other members of the Class.

64.     As a result of the foregoing acts and/or omissions, Defendants deprived Plaintiff and the Class of their rights in violation of PHL § 2801-d.

65.     Defendants' deprivation of Plaintiff's and the Class's rights in violation of PHL § 2801-d substantially contributed to, created, and/or caused Plaintiff's and the Class's injuries. These injuries include, but are not limited to: being subjected to an increase risk of harm; being forced to undergo unnecessary medical treatment; incurring medical expense; suffering disfigurement, disability, mental anguish, and pain; suffering loss of enjoyment of life; and suffering a loss of the benefit of the bargain for which they contracted with Defendants -- namely, a residency at a nursing home with, at the least, staffing sufficient to satisfy the requirements of New York and federal law.

66.     Defendants' responsibilities and obligations to Plaintiff and the Class are non-delegable, and thus Defendants have direct and/or vicarious liability for violations, deprivations, and infringements of such responsibilities and obligations by any person or entity under Defendants' control, direct or indirect, including their employees, agents, consultants, and independent contractors, whether in-house or outside entities, individuals, agencies, or pools, or caused by Defendants' policies, whether written or unwritten, or its common practices.

67.     All acts and omissions committed by employees and agents of Defendants were pervasive, omnipresent events that occurred and continued throughout Plaintiff's and the Class's residency at the Facility, and were such that supervisors, administrators, and managing agents of Defendants knew, or should have been aware, of them.

68.     Pursuant to PHL § 2801-d(2), Plaintiff and the Class seek compensatory damages in an amount sufficient to compensate each Patient for his or her injury, but in no event less than twenty-five percent of the daily per-patient rate of payment established for the Facility under

18

PHL § 2807, or, in the event the Facility does not have an established rate, the average daily total

charges per patient for the Facility, for each day that such injury existed.

69.     In addition to damages suffered by Plaintiffs and the Class as the result of

Defendants' deprivation of their rights as nursing home residents, justice requires that Plaintiffs

and the Class recover attorney's fees pursuant to PHL § 2801-d(6), punitive damages pursuant to

PHL § 2801-d(2), and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests that

the Court grant relief against Defendants as follows:

a.   For a Court Order certifying that the action may be maintained as a class action;

b.   For injunctive relief prohibiting Defendants' violations of PHL §§ 2801-d and
     2801-c in the future;

c.   On the First Cause of Action for violation of PHL § 2801-d, damages in an
     amount to be determined at trial and punitive damages, together with costs,
     disbursements, and attorney's fees in this action;

d.   For restitution and any other monetary relief permitted by law;

e.   For attorney's fees and costs; and

f.   For such other and further relief as the Court may deem just and proper.

19

## DEMAND FOR TRIAL BY JURY

Plaintiff, individually and on behalf of the Class, demands a trial by jury as to all issues

triable of right.

Dated:  White Plains, New York
        November 27, 2018

                                         Respectfully Submitted,

                                         **FINKELSTEIN, BLANKINSHIP,**
                                         **FREI-PEARSON & GARBER, LLP**

                                         By: */s/Todd S. Garber*
                                         Todd S. Garber
                                         Jeremiah Frei-Pearson
                                         John Sardesai-Grant
                                         Ayana McGuire
                                         445 Hamilton Avenue, Suite 605
                                         White Plains, New York 10601
                                         Tel: (914) 298-3281
                                         Fax: (914) 824-1561
                                         tgarber@fbfglaw.com
                                         jfrei-pearson@fbfglaw.com
                                         jsardesaigrant@fbfglaw.com
                                         amcguire@fbfglaw.com

                                         *Attorneys for Plaintiff and the Proposed Class*

20

## **VERIFICATION**

STATE OF NEW YORK      )
                               ) ss:
COUNTY OF WESTCHESTER   )

I, the undersigned, am an attorney admitted to practice in the Courts of the State of New York and say that:

I am the attorney of record for the Plaintiff and proposed Class. I have read the annexed Summons and Class Action Complaint and know the contents thereof, and the same are true to my knowledge, except those matters therein which are based on information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based on the contents of the file. The reason I make this affirmation instead of Plaintiff is because Plaintiff resides outside the county in which I have my office.

Dated: White Plains, New York
       November 27, 2018

                                        */s/Todd S. Garber*
                                        Todd S. Garber
                                        **FINKELSTEIN, BLANKINSHIP,**
                                        **FREI-PEARSON & GARBER, LLP**
                                        445 Hamilton Avenue, Suite 605
                                        White Plains, New York 10601
                                        Tel: (914) 298-3281
                                        Fax: (914) 824-1561
                                        tgarber@fbfglaw.com